IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:16-CR-00070 |
| | ) | |
| v. | ) | |
| | ) | SENTENCING BRIEF |
| JACOB C. GREER, | ) | |
| | ) | |
| Defendant. | ) | |

## Table of Contents

I.  Introduction ........................................................................................................ 1

II.  Facts of the Case ............................................................................................... 3

III.  Sentencing Procedure ...................................................................................... 11

IV.  The Advisory Guidelines................................................................................. 12

V.  Section 3553(a) Analysis ................................................................................13

VI.  Conclusion ....................................................................................................... 23

## I.    <u>Introduction</u>

Jacob Greer (hereinafter "Defendant Greer") finally comes before this Court – over six (6) years after he fled while on pretrial release to avoid prosecution and being held accountable for his actions – to be sentenced for receiving child pornography that he collected for years and distributed to others. "Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams,* 553 U.S. 285, 307 (2008). Defendant Greer unquestionably harmed and debased an untold number of children for years by seeking, storing, and trading images and videos that memorialized the sexual exploitation and sexual abuse of his victims, including the victimization of prepubescent minors, toddlers, and even babies.

1

Defendant Greer did not delve into the child pornography marketplace due to the idle curiosity of his own relative youth at the time of the offense.  He confessed to law enforcement that he sought out these lurid images and videos for his personal sexual gratification.

Defendant Greer did not stumble onto child pornography, view it briefly, and delete it after he realized the error of his actions.  He used specific search terms to pinpoint the perverted material he hoped to acquire. He used multiple internet platforms to seek out child pornography, store it, and to share or even trade it with others.  Defendant Greer developed a plan to try and avoid being caught with child pornography on his computer by storing the material he collected on Internet platforms and not on the electronic devices in his home. Greer was a long-term, relatively sophisticated participant in the child pornography marketplace, notwithstanding his relative youth.

Finally, instead of readily accepting responsibility for his actions, Defendant Greer used his planning skills to circumvent being held accountable for his actions by carefully crafting and executing a plan to fake his own death while awaiting trial and absconding to the northwest United States.  This was both an obstruction of justice and a violation of Defendant Greer's pretrial release. He broke off all communication with his family while he was on the run.  Defendant Greer's time in fugitive status lasted not just a few days or months, as happens from time-to-time in some federal criminal cases. It was extraordinarily long. So successful was his flight to avoid prosecution that his own grandmother and sister thought he was dead.  After a six (6) year long manhunt, Greer was eventually apprehended living homeless in Washington state.

Justice was almost denied, but was surely long delayed, at great cost of time and money by those who sought to capture Defendant Greer when he was a fugitive from justice. Defendant Greer's actions here pushed the parameters of the offense and offender conduct far beyond the contours of a "typical" case of receipt and distribution of child pornography into new heights of egregiousness.

The government has considered the facts of the case, including Defendant Greer's personal characteristics, the severity of the offense, the defendant's conduct while on pretrial release, the advisory Guidelines range, and the § 3553(a) factors. Under the totality of the circumstances, the Government believes a sentence within the applicable Guidelines range is appropriate in this case.

## II.    Facts of the Case

Greer was born on November 7, 1994.  He is currently 28 years old. (PSR, p. 3.)

In 2014, law enforcement became aware that someone at a residence in Des Moines was trafficking in child pornography using file-sharing technology, namely chatzy.com.  In September 2014, the child pornographer posted a uniform resource locater (URL) that directed anyone who clicked on it to a 5-minute-long video that showed two minor females approximately 8 - 11 and 4 - 8 years old being raped by an adult male. (PSR, ¶ 13.) A search of the residence revealed Defendant Greer to be the culprit. (PSR, ¶ 21 - 29.)

During a consent interview with law enforcement, Defendant Greer confessed he started viewing child pornography in high school by visiting the Internet platform "4chan.org." He admitted last viewing child pornography a month beforehand. He took responsibility for posting the URL online leading others to the video of the prepubescent

girls being raped by an adult male.  He did not just casually collect child pornography - he intentionally trafficked in it. For example, he would go into Omegle.com and share links of child pornography to Dropbox and, in exchange, he would get links of child pornography in return. He saved child pornography files by attaching them to emails and saving them as a draft. Greer disclosed that in the prior year he had accessed child pornography every other day.  Greer admitted he had masturbated to child pornography. (PSR, ¶¶  24-29.)

As would be expected of someone who admittedly stored his child pornography online, the collection found on the electronic media seized from Defendant Greer was not huge in the grand scheme of things. On the seized media were approximately 36 jpg or image files of child pornography, some showing children as young as toddlers. Of these images, 18 images were in the "slut" folder and 17 were deleted and recovered from the cache. Defendant Greer received the images between June 11, 2013, and November 28, 2014. (PSR, ¶¶  30-31.)  However, the forensic examination of Defendant Greer's electronic devices revealed much more.

Greer used a variety of means to acquire and traffic in child pornography, including 4chan.org, Dropbox, Ares, and FrostWire. (PSR, ¶¶  32-34.) Dating back as early as 2010, Defendant Greer was collecting child pornography of minors as young as babies, and 6-year-olds. (PSR, ¶¶ 33-34.)  Additionally, Defendant Greer's confession to sending URLs of child pornography to others was confirmed by the discovery on his computer of well over 100 URLs with names indicative of child pornography. (PSR 36.)

In summary, the evidence shows Defendant Greer to be not a young man who dabbled in child pornography out of curiosity or on a casual whim, but to rather be a

prolific participant in the child pornography marketplace, acquiring and distributing such material for years.

After the investigation was complete, a two-count Indictment was filed on April 27, 2016, in the Southern District of Iowa, charging Defendant Greer with receipt and possession of child pornography. (PSR, ¶ 1.)  On April 29, 2016, the parties agreed to Defendant Greer's release on conditions, which was ordered by the Court. (DCD 16). Defendant Greer pledged to this Court he would abide by the following conditions while on pretrial release:

a)    Defendant Greer was not to commit any other federal, state, or local offense;

b)    Defendant Greer was ordered on home confinement;

c)    Defendant Greer was ordered to immediately notify the Court, defense counsel, and the United States (U.S.) Attorney's Office in writing of any change of address;

d)    Defendant Greer was ordered to appear at all proceedings as directed, and promised to appear at all proceedings and to surrender for service of any sentence imposed;

e)    Defendant Greer was placed in the custody of Madison Greer, his sister, who was to supervise him, "use every effort to secure the appearance of the defendant for scheduled court proceedings," and who was to notify the Court of any violations or if Greer disappeared;

f)    Defendant Greer's travel was limited to Iowa;

g)    Defendant Greer was not to have or use illegal controlled substances;

h)    Defendant Greer was to participate in Global Positioning System (GPS) electronic monitoring;

i)    Defendant Greer was to allow the United States Probation Office (USPO) to visit him at any time or place where he resided;

j)    Defendant Greer was not to use or possess a computer or cell phone with

the capacity to connect to the Internet without permission; and

k)      Defendant Greer's residence had to be approved in advance by the USPO.

Greer was given a chance to prove he had clearly accepted responsibility for his actions, and he repaid the opportunity afforded to him and the trust bestowed upon him by concocting and executing an elaborate plan to escape the consequences of his actions. Defendant Greer violated at least nine (9) of these conditions – for years.

On May 31, 2016, Defendant Greer faked his own death.  He cut off the GPS ankle bracelet he was court-ordered to and agreed to wear, and left a suicide note near it, resting by a body of water in Dallas County.  (PSR 39.). While apparently Defendant Greer fooled his family, the U.S. Marshalls Service Fugitive Task Force (Fugitive Task Force) was not convinced.  The Fugitive Task Force and other law enforcement started looking for Defendant Greer, who was wanted on a federal warrant for absconding. (PSR, ¶ 40.)  In June 2016, the U.S. Forestry Service found a vehicle near Flathead, Montana that Defendant Greer had used, but he was not located. (PSR, ¶ 41.). The investigation learned Greer had money, a bow, arrows, and survival gear, and "had plans to live off the land in remote areas of the upper western states or southern Canada, hiding out in abandoned cabins." (PSR ¶ ¶ , 41, 43.). He was seen, but not apprehended, in Kalispell, Montana. (PSR, ¶ 42.) At times the search for Greer was nationwide and even international, involving law enforcement from Canada, Iowa, Florida, Montana, Washington, Oregon, and even the State Department in Russia. (PSR, ¶ 45, 46.)

Defendant Greer was eventually apprehended on April 4, 2022, in Spanaway, Washington, where he had settled years ago, working odd jobs, and living homeless. (PSR, ¶ 46.)

Defendant Greer's escape plan triggered a staggering expenditure of time and resources by law enforcement that would not have been incurred but for his unlawful flight to avoid prosecution. The U.S. Marshalls Service estimates law enforcement invested approximately 700 work hours in an effort to find and capture Defendant Greer. (PSR 47.)

Defendant Greer's scheme harmed not just his child pornography victims, it harmed his family, as well. His grandmother died thinking he was dead. (PSR, ¶ 48.). When the U.S. Marshall's Service notified Defendant Greer's sister that he had been found, she sobbed when she learned he was alive. (PSR 48.). In fact, she first asked the Deputy who called her where her brother's body had been found.

The defense has represented it intends to offer a Psychosexual Evaluation of Defendant Greer at sentencing. If so, some things in the Evaluation provided to the Government bear mentioning.

First, a source of some of the information in the Evaluation is unclear. The Evaluation mentions it interviewed Defendant Greer's sister, Cora Burgett, for background information, but the PSR notes his only sibling is Madison Greer. (PSR, ¶ 85.) Something isn't lining up.

Second, while Defendant Greer paints a portrait of being raised by an abusive grandmother, he told the probation officer he had a good relationship with his

grandmother (PSR, ¶ 84.)  The PSR notes he was never physically or sexually abused. (PSR, ¶ 79.)

Third, while the Psychosexual Evaluation speculated Defendant Greer may have been sexually abused as a child, there is absolutely no proof of this.

Fourth, while the Psychosexual Evaluation concluded Defendant Greer has no indicia of antisociality, it should be noted he chose to live homeless for years, letting his grandmother and sister believe he was dead.

Fifth, while the Evaluation suggests Defendant Greer may have autism spectrum disorder, he has never been diagnosed with such a condition.

Sixth, the Evaluation concludes Defendant Greer has Post-Traumatic Stress Disorder (PTSD), but fails to identify a specific triggering event or series of events that would cause him to suffer from such a disorder. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed.) (DSM-V) explains that a PTSD diagnosis requires the subject to have been exposed  "to actual or threatened death, serious injury, or sexual violence", in one of several ways, such as by (1) directly experiencing a traumatic event; (2) witnessing the event as it occurred to someone else; or (3) learning that such a close friend or family member had a violent or accidental death. DSM-V, p. 271. None is identified in the Evaluation., Additionally, the subject must experience some sort of recurring memory, dream, reactions, or distress related to or resembling the traumatic event.  None is mentioned in the Evaluation. DSM-V, p. 271.   There are other criteria, as well. DSM-V, pp. 271-272. The Psychosexual Evaluation does not document Defendant Greer experiencing such an event, or having other of the specified diagnostic features. DSM-V, pp. 274-276. The functional

consequences of PTSD occur as impairments in the "social, interpersonal, developmental, educational, physical health, and occupational domains." DSM-V, pp. 278-279.  Defendant Greer has not demonstrated such substantial functional impairments.  Of course, the Government acknowledges Defendant Greer and his sister were raised, in part, by dysfunctional parents, and that he was understandably distraught when his mother died of cancer when he was 12 years old.  But these circumstances do not fit within the paradigm of events that can trigger PTSD according to the DSM-V.

Seventh, the Psychosexual Evaluation concludes Defendant Greer maintains a sexual interest in post-pubescent adolescent females.  While this may not fit the criteria for Pedophilic Disorder, it demonstrates Defendant Greer, now 28, is still sexually attracted to underage females, which is of concern given that it is illegal under federal law for a person to receive and possess child pornography of adolescent females.

Eighth, the Psychosexual Evaluation states Defendant Greer does not have a "pervasive sexual interest in prepubescent children", (p. 13), but does not conclude he has no sexual interest in prepubescent children.  This, too, is a concern, given the nature of the offense conduct.

Ninth, the CASIC scoring (p. 10) may be flawed, as Defendant Greer seems to merit a score of three (3), not two (2):  he possessed child pornography videos; he had an interest in child pornography for more than two (2) years; and he has never been married or lived in a committed relationship.  As noted in the PSR, Defendant Greer's significant other lives in Tacoma, Washington (PSR, ¶ 86), while he lived in Spanaway, Washington (PSR, ¶ 88), some sixteen (16) or so miles away.  Thus, Defendant Greer

9

scored more similar to those who had pedophilic interests than non-pedophilic interest, if it matters.

Tenth, the Psychosexual Evaluation's assessment of Defendant Greer's offense conduct is skewed.  (p. 16.) It reports he did not have many images, but fails to consider he stored his child pornography on Internet platforms and deleted it from his electronic devices. The forensics revealed Defendant Greer collected and traded child pornography for years. The number of images and videos Defendant Greer sought out and downloaded will never be known because he deleted the content at times, but it surely far exceeds what is on his computer. Also, the content of Defendant Greer's collection included babies, toddler, and prepubescent children.  Indeed, this case originated when he was caught sharing a URL of prepubescent minor females being raped. Defendant Greer's collecting behavior was sophisticated to the extent he devised a means to store his materials (many in the form of URLs)  at a location (on online platforms) where his risk of being caught was minimized.  He was involved with other offenders in an online community – he went to online platforms where he could connect with others interested in child pornography and traded materials with them.

The facts reveal that, notwithstanding Defendant Greer's relative youth when he started seeking out and collecting child pornography for his sexual gratification, he continued to traffic in child pornography for years after he became an adult. His actions were not those of a youth exploring his own sexuality by looking at age-appropriate material.  He collected and distributed material showing the sexual exploitation and sexual assault of prepubescent females, toddlers, and babies. He did not simply view child pornography in the privacy of his own home:  he sought out others who had an

10

interest in child pornography and traded part of his collection for parts of theirs. All of these factors, and more, should be considered by this Court at sentencing.

### III.   <u>Sentencing Procedure</u>

The U.S. Sentencing Commission Guidelines Manual is useful in this case for helping to identify why the defendant's sentence should be substantial.  Though no longer mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the Guidelines still play an important role in sentencing procedures.  A district court must begin "by correctly calculating the applicable Guidelines range," *Gall v. United States,* 552 U.S. 38, 49 (2007).  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* at 49. The court must then consider the parties' arguments and factors specified in 18 U.S.C. § 3553(a).  *Gall,* 552 U.S. at 49–50.  The court "may not presume that the Guidelines range is reasonable." *Id.* at 50.  District courts are charged with imposing sentences that are " 'sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in" § 3553(a).  The court may "in appropriate cases impose a non-Guidelines sentence based on disagreement with the [Sentencing] Commission's views." *Pepper v. United States,* 562 U.S. 476,501 (2011) (citing *Kimbrough v. United States,* 552 U.S. 85, 109–110 (2007)).  The district court must explain the basis for its chosen sentence on the record. *Gall,* 552 U.S. at 50. "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." *Id.*

## IV.   The Advisory Guidelines

In full, Defendant Greer's advisory guidelines range is calculated as follows:

| Guideline | Enhancement |
|---|---|
| Base offense level - U.S.S.G.§ 2G2.2 | 22 |
| Prepubescent  victims - U.S.S.G. §  2G2.2(b)(2) | +2 |
| Distribution in exchange for other images - U.S.S.G. §  2G2.2(b)(3)(B) | +5 |
| Sexual abuse or exploitation of an infant or toddler / sadistic conduct - U.S.S.G. § 2G2.2(b)(4) | +4 |
| Use of a computer - U.S.S.G. § 2G2.2(b)(6) | +2 |
| Number of images - U.S.S.G. § 2G2.2(b)(7) | +2 |
| Obstruction of justice - U.S.S.G.  3C1.1 | +2 |
| Total | Level 39 |

(PSR, ¶¶  57 – 71.) It bears noting that the forensic evidence and Defendant Greer's confession establishes he trafficked in a far greater number of images than that set forth in the PSR.  The § 2G2.2(b)(7) enhancement substantially underrepresents what actually transpired, because he deleted some material over time, and he stored his material on the Internet.  *United States v. Hennings,* 23 F.4th 820, 822, n 2 (8th Cir. 2022) *citing United States v. Rivenbark,* 748 F.App'x 948, 954 (11th Cir. 2018)

(suggesting the law does not permit a child pornography defendant to use hyperlinks and third-party virtual storage to avoid prosecution).

The Sentencing Commission has recommended that only downward departures "expressly enumerated in . . .Part K [are the permissible grounds] upon which a downward departure may be granted" for crimes against children and sexual offenses.  USSG § 5K2.0 (b) (Downward Departures in Child Crimes and Sexual Offenses).

Defendant Greer obstructed justice by violating this court's order of release, cutting of his ankle monitor, faking his own death, and absconding for more than six years. (PSR 55.). Thus, a 2-level enhancement under U.S.S.G. 3C1.1 applies.

Defendant Greer admits he merits no credit for accepting responsibility, given his 6 years of doing all within his power to escape responsibility for his actions. (PSR, ¶ 56.)

The statutory sentence of incarceration is a minimum of 5 years and no more than 20 years. 18 U.S.C. § 2252(b)(1) (PSR, ¶ 117.)

At level 39, criminal history category I, the advisory guidelines range recommends a sentence of 262 to 327 months.  Thus, the statutory maximum becomes the guidelines range, or 240 months. (PSR, ¶ 118.)

## V.    Section 3553(a) Analysis

Federal law requires the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when determining the appropriate sentence for a criminal

defendant.  An analysis of these factors supports a guidelines sentence.

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant**

Defendant Greer is 28 years old.  He started not just collecting, but trafficking in child pornography in his teens and continued to do so into his 20s.  He knowingly traded child pornography with other people, on numerous platforms.  The crimes he committed cannot be dismissed or discounted as aberrant behavior of a young man. He trafficked in material showing the sexual exploitation of babies, toddlers, and prepubescent minors, among others.

Defendant Greer originally admitted to law enforcement he collected such materials for his sexual gratification. The facts of the case as set forth in the PSR provide no other reason for Defendant Greer to have collected and traded child pornography other than for his sexual gratification.  This is particularly concerning in that he trafficked in child pornography of very young children.

Defendant Greer was raised by his grandmother, who died believing the false narrative he crafted that he had committed suicide. His "basic needs were always met." He was raised in a good neighborhood. He never experienced any physical or sexual abuse. (PSR, ¶ 79.).  He described his relationship with his grandmother as "good." (PSR, ¶ 84.)

Defendant Greer is in good physical health. (PSR, ¶¶ 91-92.)

Defendant Greer has suffered from no mental health issues that impaired his education:  Defendant Greer was a successful student, graduating from high school

with a 3.55 grade point average on a 4.0 scale. (PSR 102.). He started college at Iowa State University, but dropped out to assist his grandmother and due to the cost. (PSR 103.)  Defendant Greer reported to the probation officer writing the PSR that he struggled with depression after the death of his mother from cancer when he was 12 years old, and from some "small bouts" of depression from time-to-time over the years since then. (PSR, ¶ 94.) He did not believe he needed mental health treatment. (PSR, ¶ 94.) Nevertheless, defendant Greer may need mental health counseling to help him deal with stressful situations (PSR, ¶¶ 93 - 95), such as his arrest and his incarceration.  The Court should address his mental health needs when setting the conditions of supervised release.

The behavior that sets Defendant Greer's case apart from that of a "typical" child pornographer who spends years seeking out, receiving, collecting, and trading child, using well-thought out means to keep evidence of the true extent of his activities off the computers he used, is his elaborate and successfully executed plan to escape from this court's pretrial supervision and to flee to avoid prosecution.  He did not just cut off his ankle bracelet and run.  He faked his own suicide so successfully that his own grandmother and sister believed it.  He took with him money and the gear he planned to use to survive in the wilderness. He managed to evade the efforts of law enforcement to recapture him not just for a brief period of time, but for approximately 6 years.  Each and every day he did so was an act of obstruction of justice.  Defendant Greer's unlawful flight to avoid prosecution threw fuel on an

already blazing fire of criminal conduct.   The egregiousness of Defendant Greer's criminal conduct, coupled with his flight, take this case far above the benchmarks of a "typical" child pornography case.

A guidelines sentence is appropriate under these factors.

**(2) The seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The offense Defendant Greer committed, receiving child pornography – and trading it with others – is very serious.

"Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams,* 553 U.S. 285, 307 (2008). It is important to bear in mind that Defendant Greer did not harm and debase a single victim:  He harmed and debased numerous victims, some of whom were victimized as babies and toddlers.

The harm Defendant Greer inflicted is well-described by the U.S. Supreme Court.  *Paroline v. United States,* 572 U.S. 434, (2014):

> The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation." Because child pornography is now traded with ease on the Internet, "the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially."

*Id.* at 439 – 440 (citations omitted.) Because the images of their sexual exploitation and sexual assault are circulated by people like Defendant Greer, these children or former children continue to be victimized each and every time the record of their abuse is circulated and viewed.

Defendant Greer did not simply possess child pornography. He collected it, and he traded it to others. He grew the child pornography marketplace. His course of criminal conduct spanned years. The seriousness of the offense conduct is not in dispute. The trafficking of child pornography is unquestionably serious.

The sentence here needs to be stern to promote respect for various aspect of the law. First, the sentence needs consider respect for the laws criminalizing child pornography. But, secondly, the sentence needs to factor in respect for the law governing pretrial detention of criminal defendants, especially in a case such as this, where these was a presumption of detention. Defendant Greer was afforded a somewhat rare opportunity for a person charged with receiving child pornography to await trial on pretrial release, and he profoundly violated the Court's order by faking his own death and absconding for years.

A just punishment calls for the sentence to impose consequences on Defendant Greer for his offense conduct and his obstruction of justice. The punishment must fit the totality of the circumstances.

These factors support a guidelines sentence.

### (3) The need to afford adequate deterrence to criminal conduct

A lengthy sentence is called for in this case both to deter others from producing and trafficking in child pornography and, to the extent possible, to deter this defendant. *See United States v. Lukasavitz,* 2013 WL 1703326 (E.D. Mich. 2013) (deterrence matters in child pornography cases). And, of course, the sentence needs to deter the defendant and others from obstructing justice. Defendant Greer's flight

17

from justice merits a substantial term of incarceration as a deterrent, in and of itself. Those defendants afforded the opportunity for pretrial release on conditions need to know that the consequences of violating their conditions and unlawfully fleeing to avoid prosecution will be substantial.

### (4) The need to protect the public from further crimes of the defendant.

The extent to which the sentence imposed must protect the public from further crimes of the defendant is simply unclear from this record.  He trafficked in child pornography for years, apparently stopping when he was confronted by law enforcement when they executed a search warrant at his residence in 2015.  While there is no way of knowing what Defendant Greer was doing while he was on the run for 6 years, the U.S. Attorney's Office for the Southern District of Iowa is not currently aware that he is the subject of any other criminal investigations.   However, given Defendant Greer's skills on the Internet, as evidenced by his use of numerous platforms to commit the crime in this case, it will likely be difficult for him to refrain from taking another dive down the proverbial rabbit hole of the Internet when he is, again, out and about in the community.  The Court should impose tight restrictions on Defendant Greer's Internet use while he is on supervised release – and may well want to consider a lengthy term of supervision for the protection of the community.

Defendant's unlawful flight to avoid prosecution for 6 years also suggests he has few qualms about breaking the law when it suits his purposes. He was able to justify violating this Court release order, faking his death, and staying on the run for

years.

### (5)   The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Defendant Greer is an intelligent young man.  He did well in high school.  He started college, before his financial circumstances led him to stop his collegiate education.  Hopefully he will take advantage of opportunities while incarcerated and on supervised release to improve himself educationally and vocationally.

Defendant Greer does not appear to suffer from any physical ailments.

Defendant Greer was likely impacted as a child by his parents' meaningful absence from his life due to their substance abuse and incarceration issues, and by his mother's death from cancer when he was 12 years old. His background did not prevent him from being a strong student and from obtaining and maintaining employment before he absconded. Yet, Defendant Greer may benefit from mental health counseling, while incarcerated and while on supervised release.  While he reported he did not believe he needed counseling, he is open to the idea.  He may well have lingering depression and anxiety issues, or other mental health problems that counseling, therapy, and treatment might help him overcome.

### (6) The guidelines, policy statements, and the statutory punishment

The statutory punishment in this case was set by Congress at between 5- and 20-years' incarceration, due to the seriousness of the offense.  A life term of supervised release is authorized, with a minimum of 5 years under supervision after any term of

incarceration.

It is entirely appropriate for the district court, even in the era of "advisory" Sentencing Guidelines, to consider and give significant weight to Congress and the U.S. Sentencing Commission's policy statements that federal courts should generally avoid sentences below the guidelines range for persons who commit sex offenses against minors.  *United States v. O'Conner*, 567 F.3d 395, 398 (8th Cir. 2009) (citing 18 U.S.C. § 3553(b) (2) and USSG §5K2.0 (b)).

Defendant Greer's advisory Guidelines range is not arbitrarily or artificially high. It is high for specific reasons. Defendant's Guidelines range is high because he sought out and collected material involving babies, toddlers and prepubescent children. It is high because he traded child pornography on the Internet with other people.  It is high because of the number of images he had. (Though, as noted, the Guidelines calculation under-represents the number of images he really had, because he deleted some from time-to-time and he stored many on the Internet.) It is high because he did not accept responsibility and obstructed justice. (Indeed, if he received acceptance of responsibility credit and no obstruction enhancement, his range would be level 34, or a recommended incarceration term of 151 – 188 months.)

The Guidelines and policy statements are sound in this case.

**(7)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

This "factor often favors a sentence within the advisory guidelines range."

20

*United States v. Munjak,* 669 F.3d 906 (8th Cir. 2012), and it does so here.

The Guidelines recommend a sentence of 240 months in prison for a defendant with a similar record who has been found guilty of similar conduct. Actually, they recommend a much higher sentence, but the Guidelines range is capped by the statutory maximum.

Also, the Guidelines range here underrepresents the number of images that Defendant Greer actually collected and traded: the more accurate range is likely a 5-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D), not the 2-level enhancement being used. From that perspective, this defendant's conduct actually calls for a Guidelines range at level 42, or 360 months to life. Accordingly, a 240-month sentence is actually more lenient that those recommended for defendants with similar backgrounds who committed the same offense conduct.

The "average" sentence for a defendant in this district convicted of a child pornography offense – which factors in the lesser offense of possession of child pornography – is 133 months imprisonment. (PSR, ¶ 135(g).) But, Defendant Greer is far from the average defendant, given the length of his criminal activity, the volume of material involved, the ages of his victims, his trading activity, and his unlawful flight to avoid prosecution. A sentence well above the statistical average in this district is warranted here.

### (8) The need to provide restitution to any victims of the offense

The government anticipates addressing restitution in a separate pleading.

**(9) Variance**

The government is unaware of any grounds for a variance.

The government acknowledges that Defendant Greer's age at the time of the offense is a factor the Court can consider under § 3553(a) in determining what sentence is reasonable. *See for example, United States v. Swinnerton,* 842 Fed.Appx. 380 (6th Cir. 2020) (applying downward variance in child pornography case involving defendant who was eighteen at the time of the offense, and affirming sentence of 420 months for production, receipt, and possession of child pornography);

The government advises it started weighing the defendant's age when it was even deciding whether to bring federal charges.  Had this been a case where a 20-year-old male was simply caught downloading sexually explicit material of women close to his own age, he would likely not be here.  This is not that type of case.  Defendant Greer was not simply a young man exploring normal or near-normal sexuality. He participated in the child pornography marketplace for years. He trafficked in material it was **never** proper for him to seek out, collect, and share, namely material involving the sexual exploitation of prepubescent minors, toddlers, and babies. He admitted to the law enforcement officers who interviewed him on the day his residence was searched that his actions were for his own sexual gratification.  He traded child pornography with other people.  Defendant Greer's relative youth was and is no justification for, or excuse for, his actions in victimizing the most vulnerable and helpless members of society. The extent to which Defendant Greer knew the wrongfulness of what he had done early on in this case is dramatically illustrated by his unlawful flight to avoid prosecution.

22

Defendant Greer was simply not some naïve youth whose criminal conduct merits leniency because it was the aberrant or impulsive behavior.  He knowingly engaged in illegal conduct of various types from 2010 until he was apprehended in 2022. Under the totality of the circumstances, Defendant Greer's relative youth at the time of his offense do not merit a variance.  And, if the Court disagrees, the government respectfully requests that any such variance be minimum, to reflect the other § 3553(a) factors.

**(10) Supervised release.**

The Court has considerable options as far as the length of supervised release is considered. Congress authorized a lifetime term of supervised release for child pornography cases because

> [of the] long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

H. R. Rep. No. 108–66, at 49–50 (2003) (Conf. Rep.), reprinted in 2003 U.S.C.C.A.N. 683, 684.  Under the facts of this case, the government defers to the Court's discretion as to the proper length of Defendant Greer's supervised release term, which must be at least five (5) years.

## VI.   Conclusion

Defendant Greer came before this Court in 2016 accused of knowingly receiving child pornography, including images of babies, toddlers, and prepubescent youth, and trading some of his collection with others.  He was afforded the opportunity to be

23

released on conditions while he resolved the charges.  He unfortunately and unwisely demonstrated his awareness of the seriousness of his criminal conduct by unlawfully fleeing to avoid prosecution, and staying on the run for six years, until he was caught by law enforcement.  His case is far from typical.  His sentence should reflect that fact.

The government respectfully recommends a sentence within the appliable Guidelines range.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By: */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant U.S. Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9298
Email: Craig.Gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

 X    ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By: */s/ Suellen Irwin*
        Paralegal Specialist